Anthony J. Di Giovanna, J.
Pursuant to a memorandum decision filed on March 22, 1962 the court directed that a hearing be held on the application for an order staying arbitration and dismissing the notice of claim, or in the alternative, setting the matter down for a preliminary hearing on the question of timeliness of the filing of the notice of claim against the petitioner. The application was based upon Motor Vehicle Acc. Ind. Corp. v. Brown (15 A D 2d 578). Although I do not agree with the contention of the petitioner that therein is enunciated a rule requiring a hearing in every case, nevertheless, in order to avoid any possibility of prejudice, a hearing was ordered and held.
The very same facts appearing in the prior memorandum were submitted at the hearing, to wit: that an accident occurred to the infant on June 21,1959; that he was confined to the hospital until July 9, 1959 when he left with his leg still in a cast; that he had sustained fractures of the midshafts of the left tibia and fibula and overriding of fragments, soft tissue damage and perineal nerve involvement complicated by slipping of fragments; that his parents hired attorneys on July 2,1959 who in turn hired trial counsel; that preliminary investigations were then made; that a copy of the police blotter report was received on July 14, 1959; that photographs were taken and statements of witnesses obtained; that a report was received from Brooklyn Hospital on July 30, 1959; that subsequently an action was commenced *706 on August 27, 1959 by service of a summons and complaint on the defendant; that on September 18, 1959 pursuant to request mailed on August 28, 1959 a certified copy of the MV-104 report filed by the defendant was received from the Motor Vehicle Bureau; that that certified copy of the MV-104 contained a statement to the effect that the defendant was insured by Phoenix of Hartford; that the defendant defaulted in appearance; that instead of taking a default judgment, the claimants’ attorney sent a letter to the defendant to find out why he had defaulted, in order to give him an opportunity to answer or appear; that a telephone call was then received after November 27 and before December 2,1959 from a personal attorney of the defendant, who advised plaintiffs’ attorneys that his insurance company had cancelled his insurance policy several months before the time of the accident; that following the receipt of this oral information, a claim was filed with the petitioner on December 2, 1959; and that in December, 1959 a notice of disclaimer was sent by the petitioner based upon the ground that the notice of claim had been untimely filed. In January, 1960 a copy of a letter was received from Phoenix of Hartford, in which notice of cancellation of the defendant’s policy had been effectuated in February, 1959.
The hearing resulted in a restatement of the foregoing facts plus this additional information: that immediately after the occurrence, the defendant had told the claimant’s parents that he was insured; that this information had been related by the parents to the claimants’ attorneys; that the request for the MV-104 had been sent in August, 1959; that in August, 1959 a claim was made from the Empire Mutual for medical payments pursuant to the provisions of the policy issued to the claimant’s parents. In all other substantial respects no additional facts were elicited from the witnesses.
The policy of the father of the injured plaintiff contained the following condition: “ 3. Notice and Proof of Claim; Medical Reports: Within 90 days or as soon as practicable, the insured or other person making claim shall give to MVAIC written notice of claim under this endorsement.”
It is interesting to note that in its memorandum of law the petitioner relies upon the following: “ No apparent attempt was made to contact the Phoenix of Hartford concerning their policy holder, Raymond McKinney with reference to their default in appearing for their assured. ’ ’ The default referred to occurred on September 16, 1959 when the defendant failed to answer the complaint. Such contention cannot form the basis for the instant application. The injured claimant has nothing to do with the *707 insurance company of the defendant. Under our practice the insurance company is not a defendant. Certainly the insurance company would not have accepted service of the summons upon it rather than upon its assured. The procedure followed by the claimants’ attorneys was proper. Having been assured by the MV-104 that the defendant did carry insurance, the attorneys did that which any prudent attorney would do, namely, wrote a letter to the defendant to find out why his insurance company had failed to appear for him. When the information was received by the attorneys on November 27 that his insurance had been can-celled long before the accident, the notice of claim was promptly filed. The petitioner relies upon the fact that it was not until after November 27, 1959 that the telephone call was received concerning the noninsurance of the defendant; that nothing apparently was done in the intervening time to protect the interests of the infant. On the other hand, the record is replete with facts indicating that orderly procedure was followed in protecting the interests of the infant. The fault lies not with the attorneys for the claimants but with the inconsistencies and insufficiencies of the law relating to MVAIC and to the terms of the indorsement upon the policy. No evidence was adduced at the hearing by the petitioner to show that there is any standard procedure for the claimants to have received upon request information from the Motor Vehicle Bureau concerning the insurance status of the defendant. The court fails to find any particular statute covering this matter excepting that section 354 of the Vehicle and Traffic Law requires the Commissioner to furnish upon request to any insurance carrier or any interested person a certified abstract of the operating record of any person subject to the provisions of the Safety Responsibility Act. Whether such operating record would include information concerning insurance was not brought out at the hearing.
In any event, it seems to me that the fault lies with the practice in the Motor Vehicle Bureau. That bureau is charged with the duty of filing MV-104 reports and also receiving proof of insurance. It would appear to me that it should be incumbent upon the Motor Vehicle Bureau to ascertain immediately upon the filing of an MV-104 report whether the statement therein concerning insurance is correct. It should not issue a certified copy of an MV-104 report containing a statement that insurance is in existence, even though such statement has been made by the alleged insured person, if in fact its own records indicate that the insurance company had withdrawn its coverage sometime prior thereto. The law should require a statement to be made by the Motor Vehicle Bureau apprising the applicant for *708 information concerning the true status of the insurance information. Certainly, an attorney who receives an MV-104 report which contains a statement thereon that insurance exists may very easily be misled. Such condition can be remedied either by legislation or by inclusion in the policy provisions of a contract clause covering this situation. There appears to be no requirement under section 354 of the Vehicle and Traffic Law that such insurance information be furnished thereunder.
In support of its contentions the petitioner has cited Matter of Motor Vehicle Acc. Ind. Corp. v. Brown (15 A D 2d 578, 579). However, that case does not aid the petitioner because the court therein said: “ Notice can hardly be given until there is knowledge of the facts upon which notice can be predicated ”. The petitioner also cited Rosante v. Copenhaver (15 A D 2d 825); Danielson v. Motor Vehicle Acc. Ind. Corp. (22 Misc 2d 943); Ortiz v. Pabón (22 Misc 2d 241); Tyler v. Gammon (21 Misc 2d 546); Labanowski v. MVAIC (N. Y. L. J., May 11, 1960, p. 13, col. 6, motion to dismiss appeal granted 11 A D 2d 992). The Rosante case is not in point because it involves a “ qualified ” person and not an insured person; so did Danielson, Ortiz, Tyler and Labanowski.
The provisions of section 608 of the Insurance Law, the basis of the applications in all of the above-mentioned cases, are not comparable to the contract provision.
Under the circumstances, I find that the claimants exercised due diligence in presenting their claim to the MVAIO and consequently the application is denied in its entirety.